IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

RICHARD V. PETIX,

                              Plaintiff,

              v.                                              25-CV-6205-MAV

UNITED STATES OF AMERICA,

                     Defendant.

---

## NOTICE OF CROSS-MOTION TO DISMISS
## PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

**PLEASE TAKE NOTICE**, that the United States of America, by Michael DiGiacomo, United States Attorney for the Western District of New York, and Melanie J. Bailey and Jonathan W. Ferris, Assistant United States Attorneys, of counsel, hereby moves this Court for an order: (1) pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, dismissing Plaintiff's action; (2) otherwise denying Plaintiff's motion for the return of property under Rule 41(g); and (3) for such other and further relief as the Court may deem just or proper. Defendant's motion is supported by the accompanying Memorandum of Law.

**PLEASE TAKE FURTHER NOTICE THAT** Defendant intends to serve and file reply papers and, therefore, any papers in opposition to this motion are due 14 days from the date of service of this motion, pursuant to Local Rule 7(b)(2)(A).


DATED: June 26, 2025                MICHAEL DIGIACOMO
                                    United States Attorney

                           BY:      s/MELANIE J. BAILEY
                                    Assistant United States Attorney

                                    s/JONATHAN W. FERRIS
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    Western District of New York
                                    138 Delaware Avenue
                                    Buffalo, New York 14202

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

RICHARD V. PETIX,

        Plaintiff,

    v.                           25-CV-6205-MAV

UNITED STATES OF AMERICA,

        Defendant.

---

### THE GOVERNMENT'S RESPONSE TO
### MOTION FOR RETURN OF PROPERTY AND CROSS-MOTION TO DISMISS

The United States of America, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Melanie J. Bailey and Jonathan W. Ferris, Assistant United States Attorneys, of counsel ("the government"), hereby submit this response to the motion for return of property, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure ("Rule 41(g)") ("Rule 41(g) motion"), brought by Richard V. Petix ("Petix"), acting *pro se* (ECF 1). The government also brings a cross-motion to dismiss the Rule 41(g) motion, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)" and "Rule 12(b)(6)" respectively).[1]

---

[1]    Petix brings this action in the format of a Rule 41(g) motion, and therefore, the government responds accordingly. However, as Petix acknowledges (ECF 1 at 10), a Rule 41(g) motion that is brought after a criminal proceeding is over is treated as a civil action in equity. *See Adeleke v. United States*, 355 F.3d 149 (2d Cir. 2004) (citing *Soviero v. United States*, 967 F.2d 791 (2d Cir. 1992)). This Court should therefore treat Petix's motion as a civil complaint. The government therefore also moves for dismissal under Rules 12(b)(1) and (6) as this Court lacks subject matter jurisdiction, and the complaint fails to state a claim on which relief can be granted.

## TABLE OF CONTENTS

I.      **TABLE OF AUTHORITIES**……………………………………………...3

II.     **PRELIMINARY STATEMENT**…………………………………………….6

III.   **FACTUAL AND PROCEDURAL BACKGROUND**……………………….7

IV.   **LEGAL ARGUMENT**……………………………………………………...12

     a.  PETIX'S RULE 41(G) MOTION IS UNTIMELY AND MUST BE
        DENIED…………………………………………………………………....12

     b.  PETIX FAILS TO MEET BURDEN FOR EQUITABLE TOLLING…………..13

     c.  PURSUANT TO BINDING SECOND CIRCUIT AUTHORITY, DISMISSAL
        IS REQUIRED BECAUSE THE COURT LACKS SUBJECT MATTER
        JURISDICTION…………………………………………………………….17

     d.  PETIX FAILS TO MEET ALL THREE PRONGS FOR RULE 41(G)
        RELIEF…………………………………………………………………….20

          i.  **To meet the <u>first prong</u>, there must be a showing that Petix is
             entitled to lawful possession of the subject cryptocurrency.
             Petix has not made that showing**……………………………..……20

        ii.  **To meet the <u>second prong</u>, there must be a showing that the
             subject cryptocurrency is not contraband.  Petix has also not
             made that showing**……………………………………………………22

       iii.  **To meet the <u>third prong</u>, there must be a showing that the
             government unlawfully seized the subject cryptocurrency.
             Petix has also not made that showing**…………………………………23

V.     **CONCLUSION**………………………………………………………24

## I.    TABLE OF AUTHORITIES

**Federal Cases**

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011)..........................**14**

*Acheampong v. United States*, 2000 WL 1261908 (S.D.N.Y. 2000)...........................**21, 23**

*Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004).........................**3, 6, 12, 18, 19**

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)............................**18**

*Assil v. United States*, 2008 U.S. Dist. LEXIS 67461 (S.D.N.Y. August 26, 2008).................**13**

*Awan v. United States,* 2014 WL 1343129 (E.D.N.Y. March 31, 2014).......................**20, 22**

*Azzara v. United States*, 2020 U.S. Dist. LEXIS 26104 (S.D.N.Y. February 13, 2020)............**22**

*Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007)...........................................**12, 19**

*Bolarinwa v. Williams*, 593 F.3d 226 (2d Cir.2010)...........................................**15**

*Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).............................................**14**

*Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir. 2002)..............**15**

*Clayton v. Capra*, 690 F. Supp. 3d 157 (W.D.N.Y. 2023).......................................**15**

*Davis v. Lempke*, 767 F. App'x 151 (2d Cir. 2019)...........................................**15**

*De Almeida v. United States*, 459 F.3d 377 (2d Cir. 2006).........................................**18, 20**

*Diaz v. Kelly*, 515 F.3d 149 (2d Cir. 2008)..................................................**15**

*Diaz v. United States*, 517 F.3d 608 (2d Cir. 2008) ...........................................**19**

*Frith v. United States*, 2010 U.S. Dist. LEXIS 57000 (S.D.N.Y. June 9, 2010)......................**13**

*Henderson v. United States*, 575 U.S. 622 (2015)............................................**21**

*Holland v. Fla.*, 560 U.S. 631 (2010).......................................................**15**

*Hunter v. United States Postal Serv.*, No. 19CV2572BMCPK, 2020 WL 804946 (E.D.N.Y. Feb. 18, 2020)..............................................................................**14**

*Kardoh v. United States,* 572 F.3d 697 (9th Cir. 2009)……………………………………………**23**

*Kassman v. KPMG LLP*, No. 11-CV-3743, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015)……….**14**

*Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240 (1933)…………………………….**21**

*Lehman v. Nakshian*, 453 U.S. 156 (1981)…………………………………………………………**18**

*Mantilla v. United States*, 302 F.3d 182 (3d Cir. 2002)……………………………………….**21, 23**

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005)…………………………………………………………**14**

*Santana-Lim v. United States,* 2011 WL 121802 (S.D. Tex. Jan. 12, 2011)………………………**21**

*Soviero v. United States*, 967 F.2d 791 (2d Cir. 1992)………………………………………….**1, 12**

*Wallace v. Kato*, 549 U.S. 384 (2007)……………………………………………………………..**8, 14**

*United States v. Carn,* 2017 WL 8288088 (D. Nev. 2017)……………………………………….**22**

*United States v. Farrell*, 606 F.2d 1341 (D.C. Dist. Ct. App. 1979)………………………….**21, 22**

*United States v. Gonzalez*, 2023 U.S. Dist. LEXIS 210395 (W.D.N.Y. Nov. 27, 2023)………….**19**

*United States v. Howard,* 2019 WL 4673195 (D. Neb. 2019)…………………………………….**22**

*United States v. Kim*, 738 F.Supp. 1002 (E.D. Va. 1990)……………………………………….**21, 23**

*United States v. Lukkes,* 2022 U.S. Dist. LEXIS 80893 (D.S.D. 2022)…………………………..**22**

*United States v. Parlavecchio*, 192 F.Supp. 2d 349 (M.D. Pa. 2002)……………………………**21**

*United States v. Provenzi*, 2023 U.S. Dist. LEXIS 226059 (W.D.N.Y. December 19, 2023)…….**20**

*United States v. Testan*, 424 U.S. 392 (1976) …………………………………………………….**18**

*United States v. Zaleski*, 686 F.3d 90 (2d Cir. 2012)……………………………………………..**18**

**Federal Statutes**

Fed. R. Civ. P. 12(b)(1)……………………………………………………………**1, 5, 17, 24**

Fed. R. Civ. P. 12(b)(6)………………………………………………….…**1, 5, 12, 14, 20**

Fed. R. Crim. P. 41(g)……………………………..**13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24**

Title 18, United States Code, Section 1001(a)(2) ………….…………………………**8, 9**

Title 18, United States Code, Section 1960………………………………………………**10**

Title 18, United States Code, Section 2252A(a)(1) ……………………………………**9**

Title 28, United States Code, Section 2401(a) …………………………………….………**12**

## II. PRELIMINARY STATEMENT

Almost ten years after Petix voluntarily transferred thirty-seven (37) bitcoin (collectively the "subject cryptocurrency") to an undercover agent as part of an illegal transaction involving Petix's unlicensed money transmitting business, resulting in his arrest and conviction, Petix now seeks the return of the subject cryptocurrency in his Rule 41(g) motion.

For the following reasons, the government moves the Court to deny Petix's Rule 41(g) motion and dismiss the action: First, Petix's Rule 41(g) motion is untimely under the applicable statute of limitations (and Petix fails to meet the very high standard for equitable tolling); therefore, Petix's Rule 41(g) motion must be denied. Second, the subject cryptocurrency is no longer in the government's possession. Accordingly, consistent with *Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004), where the government is no longer in possession of the property, the Court lacks subject matter jurisdiction to afford Rule 41(g) relief. Finally, Petix's Rule 41(g) motion fails on the merits where: (a) Petix is not entitled to lawful possession of the subject cryptocurrency; (b) the subject cryptocurrency is derivative contraband where it was used unlawfully by Petix as part of an illegal transfer; and (c) the subject cryptocurrency was not unlawfully seized because Petix voluntarily transferred it to the government agent.

Therefore, the Court should deny Petix's Rule 41(g) motion and dismiss the action.

## III. FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2009, Petix was convicted of a violation of Title 18, United States Code, Section 2252A(a)(1) (Knowingly Transporting Child Pornography in Interstate Commerce). Following his conviction, Petix was sentenced to thirty (30) years of federal probation supervision (06-CR-6007, ECF 63).

While on federal probation supervision, Petix was required to disclose to federal probation officers whether he owned or had access to a smartphone or laptop computer (15-CR-227, ECF 16). Petix denied to federal probation officers that he owned or had access to a smartphone or laptop computer.

Despite Petix's denial, on or about and between August 2014 and December 2015, while still on federal probation supervision, Petix operated an unlicensed money transmitting business and engaged in the sale of bitcoin to customers.

On December 3, 2015, Petix arranged the sale of the subject cryptocurrency to a United States Department of Homeland Security – Homeland Security Investigations ("HSI") undercover agent for an amount of approximately $13,000. Petix met with the undercover agent in Buffalo, New York.

While federal probation officers observed from a distance, Petix used a smartphone and laptop to transfer the subject cryptocurrency to the undercover agent. Before the HSI

agent transferred the $13,000 to Petix, federal probation officers interrupted the transfer and Petix was detained.

On December 4, 2015, Petix was charged by criminal complaint with one (1) count of Title 18, United States Code, Section 1001(a)(2) (Material False Statement) for making a material false statement and representation to the United States Probation Office for the Western District of New York denying that he owned and had access to a smartphone and laptop computer (15-CR-227, ECF 1).

Upon information and belief, on or about December 7, 2015, HSI liquidated the subject cryptocurrency from the undercover wallet, per internal agency policy. The subject cryptocurrency was not forfeited because it was deemed voluntarily transferred to the undercover agent as part of the investigation.

On December 9, 2015, the federal grand jury in the Western District of New York issued an Indictment, charging Petix with one (1) count of Title 18, United States Code, Section 1001(a)(2) (Material False Statement) for making a material false statement and representation to the United States Probation Office for the Western District of New York denying that he owned and had access to a smartphone and laptop computer (15-CR-227, ECF 3).

On or about March 9, 2016, the federal grand jury in the Western District of New York issued a Superseding Indictment, charging Petix with one (1) count of Title 18, United States

Code, Section 1001(a)(2) (Material False Statement) for making a material false statement and representation to the United States Probation Office for the Western District of New York denying that he owned and had access to a smartphone and laptop computer, and one (1) count of Title 18, United States Code, Section 1960 (Operating Unlicensed Money Transmitting Business) (15-CR-227, ECF 16) for operating an unlicensed money transmitting business from on or about August 2014 through December 3, 2015.

On April 26, 2017, Petix pled guilty to both counts of the Superseding Indictment (15-CR-227, ECF 69).

On June 22, 2017, the government moved for a preliminary order of forfeiture based upon the forfeiture allegations contained in the Superseding Indictment (15-CR-227, ECF 73).

On July 12, 2017, the District Court issued a Preliminary Order of Forfeiture as to one (1) Samsung cellular telephone, one (1) ASUS laptop computer, and six (6) assorted thumb drives (collectively "the electronics"), and a monetary judgment in the amount of $189,862.96 (15-CR-227, ECF 75).

On November 1, 2017, the District Court sentenced Petix to time served, supervised release for a term of three (3) years concurrent on each count, plus applicable fees and forfeiture of the electronics (15-CR-227, ECF 102).

On November 3, 2017, the District Court issued a Final Order of Forfeiture as to the electronics and imposed a monetary judgment in the amount of $189,862.96 (15-CR-227, ECF 101). On November 6, 2017, the District Court issued the Judgment in the criminal case (15-CR-227, ECF 104).

On November 17, 2017, Petix filed a notice of appeal (17-3774, ECF 1-1). On July 26, 2018, counsel for Petix filed an appellant brief with the Second Circuit Court of Appeals ("Second Circuit"), appealing the Court-imposed monetary judgment of $189,862.96 (17-3774, ECF 47). On October 25, 2018, the government filed an appellee brief (17-3774, ECF 59). On November 8, 2018, counsel for Petix filed a reply brief (17-3774, ECF 63).

On April 16, 2019, the Second Circuit vacated, in part, the district court judgment as to the monetary judgment due to the failure to orally pronounce the monetary judgment on the record at sentencing. The Second Circuit remanded the case to the District Court for entry of an amended judgment (17-3774, ECF 77-1).

On April 22, 2019, the District Court issued an amended Judgment in the criminal case, removing the monetary judgment (15-CR-227, ECF 110).

On April 29, 2019, the District Court issued an amended Final Order of Forfeiture, removing the monetary judgment (15-CR-227, ECF 111).

10

On April 14, 2025, Petix filed a Rule 41(g) motion seeking return of the subject cryptocurrency (25-CV-6205, ECF 1). On April 21, 2025, Petix filed an amended Rule 41(g) motion (25-CV-6205, ECF 3).[2]

On April 30, 2025, the United States Attorney's Office, Western District of New York, received the amended Rule 41(g) Motion via certified mail.

The government now responds.

---

[2]    In addition to seeking the return of the subject cryptocurrency, Petix accuses the undercover agent of misappropriation of the subject cryptocurrency. The government denies this allegation.

## IV. LEGAL ARGUMENT

a.  PETIX'S RULE 41(G) MOTION IS UNTIMELY AND MUST BE DENIED

In Petix's motion papers, Petix acknowledges that there is a six-year statute of limitations for his cause of action (ECF 1 at 12-13). Despite this, and without explanation for the delay, Petix brings this Rule 41(g) motion for the first time, almost ten years after transferring the subject cryptocurrency, eight years after the district court sentenced Petix in the related criminal case, and well beyond the applicable six-year statute of limitations. Therefore, Petix's Rule 41(g) motion is time-barred and must be denied.[3]

The Second Circuit, in *Bertin v. United States*, held that a Rule 41(g) motion, made after the termination of criminal proceedings against the defendant, is treated as a civil complaint against the United States for equitable relief. 478 F.3d 489 (2d Cir. 2007); *Adeleke v. United States*, 355 F.3d 149 (2d Cir. 2004) (citing *Soviero v. United States*, 967 F.2d 791 (2d Cir. 1992)). Therefore, the six-year statute of limitations set forth in Title 28, United States Code, Section 2401(a) is applicable. *Bertin*, 478 F.3d at 492-93.

As provided in Title 28, United States Code, Section 2401(a) ("Section 2401(a)"), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *Bertin*, 478 F.3d at 492.

---

3    As Petix's motion is untimely, the government seeks dismissal of the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Courts in the Second Circuit have held that a claim under Rule 41(g) "accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property." *Id.* at 493; *Frith v. United States*, 2010 U.S. Dist. LEXIS 57000 (S.D.N.Y. June 9, 2010) (holding that the Rule 41(g) cause of action accrued on the date sentence and judgment was entered); *Assil v. United States*, 2008 U.S. Dist. LEXIS 67461 (S.D.N.Y. August 26, 2008).

Petix could have sought the return of the subject cryptocurrency <u>ten years ago</u>, after transferring the subject cryptocurrency, but failed to do so. Petix could have sought the return of the subject cryptocurrency <u>eight years ago</u>, following sentencing, but failed to do so. Petix could have sought the return of the subject cryptocurrency <u>almost seven years ago</u> after he filed his appeal in the related criminal case, when represented by counsel, but failed to do so. Instead, Petix brought this Rule 41(g) motion in April 2025, without any explanation for the delay, and well beyond the six-year statute of limitations,

Therefore, Petix's Rule 41(g) motion is time-barred, and the Court must deny Petix's Rule 41(g) motion and dismiss this action.

### b.  PETIX FAILS TO MEET BURDEN FOR EQUITABLE TOLLING

As discussed above, Petix acknowledges that this action is subject to a six-year statute of limitations. Presumably recognizing this fatal flaw, Petix specifically pleads for equitable tolling in his Rule 41(g) motion. (ECF 1 at p. 11-14). However, Petix fails to meet the very

13

high burden for equitable tolling, and his Rule 41(g) motion remains untimely and must be denied.[4]

As the Supreme Court has observed, "[equitable] tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007); *see also A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (citations and internal quotation marks omitted) ("Because statutes of limitations protect important social interests in certainty, accuracy, and repose … equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances."). The standard for equitable tolling "is very high." *Hunter v. United States Postal Serv.*, 2020 WL 804946, at *2 (E.D.N.Y. Feb. 18, 2020).

The burden of proving that tolling is appropriate rests on the plaintiff. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The first element – the diligence element -- limits equitable tolling to those "who have not contributed to the delay." *Kassman v. KPMG LLP*, No. 11-CV-3743, 2015 WL 5178400, at *4 (S.D.N.Y. Sept. 4, 2015). "Equity aids only the vigilant." *Hunter*, 2020 WL 804946, at *2 (citations and internal quotation marks omitted). Thus, "[g]enerally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period [he] seeks

---

4    For the same reasons, Petix's motion must be dismissed under Fed. R. Civ. P. 12(b)(6) as untimely.

to have tolled." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

The second element of equitable tolling – the extraordinary circumstances element – requires a plaintiff to "show something more than a 'garden variety claim of excusable neglect . . .'" *Clayton v. Capra*, 690 F. Supp. 3d 157, 160–61 (W.D.N.Y. 2023) (Wolford, C.J.) (quoting *Davis v. Lempke*, 767 F. App'x 151 (2d Cir. 2019) (summary order) and *Holland v. Fla.*, 560 U.S. 631, 651-652 (2010)).  Rather, the term "extraordinary" refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period.  *Bolarinwa v. Williams*, 593 F.3d 226, 231–32 (2d Cir.2010); *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir.2008).

Petix fails to make a showing of diligence or extraordinary circumstance that led to delay in seeking return of the subject cryptocurrency –the two elements on which he bears the burden. Petix fails to provide any explanation for waiting almost eight years from the date of sentencing, and nearly ten years since he voluntarily transferred the subject cryptocurrency to an undercover agent to seek Rule 41(g) relief. Since that time, Petix had ample opportunity, including seven years ago, when Petix filed his appeal, to request the return of the subject cryptocurrency – yet Petix fails to explain why he never sought Rule 41(g) relief.

Petix has failed to show an exercise of diligence in seeking the return of the property. The fact that Petix allegedly conducted a blockchain analysis—but then took no further action on that information until filing his Rule 41(g) motion---only underscores that point.

Further, Petix does not plead any extraordinary circumstances that stood in his way to filing this action within the statute of limitations. Petix's arguments, many misplaced in a Rule 41(g) motion, fail to reach the level of extraordinary circumstances that would give rise to equitable tolling.  Petix's failure to show *any* circumstances, let alone extraordinary circumstances, for his failure to act in almost ten years is inexcusable neglect on his part.

Petix alleges that agent misconduct involving the subject cryptocurrency warrants equitable tolling in this matter. Petix's argument is without merit, and the government denies this allegation. When Petix transferred the subject cryptocurrency to the undercover agent, as part of an illegal transaction, the government was not required to return the property to Petix. This is discussed in further detail below.

Petix's *Bivens* argument is also without merit, given that Petix was the individual who transferred the subject cryptocurrency to the undercover agent – there can be no unlawful search and seizure when the property was never seized. Further, an individual defendant is not named as a party in this lawsuit.

Even where Petix could argue that he was unaware that the government subsequently liquidated the subject cryptocurrency following transfer, it fails to explain why Petix waited ten years to seek return of the subject cryptocurrency, when being fully aware for many years after he transferred the subject cryptocurrency, that it was out of his possession.

Should the Court consider alternative explanation for Petix's delay, the government

16

asserts that Petix should not receive the benefit of equitable tolling for the appeal period. Petix's appeal focused on the narrow issue of the Court-imposed monetary judgment. At the time, Petix made no request for the return of the subject cryptocurrency. Therefore, the appeal period was too remote to have contributed to Petix's delay in bringing a Rule 41(g) motion.

Petix should also not receive the benefit of equitable tolling for the period of time that he was incarcerated. In 2018, Petix filed an appeal in the related criminal matter with respect to the monetary judgment, and in 2019, Petix filed for Chapter 7 bankruptcy (19-BK-21073). Given that Petix was able to partake in both proceedings, this cannot be attributed to the delay in filing this Rule 41(g) motion.

As Petix fails to meet his very high burden for equitable tolling, his claim remains untimely. Petix's Rule 41(g) motion must be denied and this action dismissed.

c.  PURSUANT TO BINDING SECOND CIRCUIT AUTHORITY, DISMISSAL IS REQUIRED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION

The government liquidated the subject cryptocurrency almost ten years ago, after Petix transferred it to the undercover agent. Where the subject property is no longer in the government's possession, the Court lacks subject matter jurisdiction for Rule 41(g) relief and must deny Petix's Rule 41(g) motion, or alternatively, dismiss the action under Rule 12(b)(1) for lack of subject matter jurisdiction.

Rule 41(g) of the Federal Rules of Criminal Procedure permits a person "aggrieved . . . by the deprivation of property [to] move for the property's return." Fed. R. Crim. P. 41(g). An order providing relief under Rule 41(g) is an equitable remedy and "is available only when . . . the equities favor the exercise of jurisdiction." *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012). Jurisdiction under Rule 41(g) "is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006).

It is well-settled that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)); *accord Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 141 (1972). "It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.' Moreover, waivers of sovereign immunity must be 'unequivocally expressed' in statutory text and cannot simply be implied." *Adeleke*, 355 F.3d at 150.

Interpreting Rule 41(g) in the context of sovereign immunity, the Second Circuit holds that courts may order the return of seized property but may not "order the United States to pay money damages when, *for whatever reason*, property is not available for Rule 41(g) return." *Id.* at 151 (emphasis added). In other words, "sovereign immunity bars a federal court from ordering the United States to compensate for property that cannot be returned pursuant to

18

Rule 41(g)." *Id.* at 147. As a result, equitable claims for money damages should be "dismissed for lack of subject matter jurisdiction because sovereign immunity bars a federal court from ordering the United States to compensate for property that cannot be returned pursuant to Rule 41(g)." *Id.*, 355 F.3d at 147; *see also Diaz v. United States*, 517 F.3d 608, 612 (2d Cir. 2008) (extending *Adeleke* to seized currency which "should be treated like any other seized property: if the property is no longer available, sovereign immunity bars the claimant from seeking compensation"); *Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007) (" Rule 41(g), which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property"); *United States v. Gonzalez*, 2023 U.S. Dist. LEXIS 210395 (W.D.N.Y. Nov. 27, 2023).

Here, under the binding authority of *Adeleke*, *Diaz*, and *Bertin*, because the government is no longer in the possession of the subject cryptocurrency, there is simply no relief available to Petix as his claims are barred by sovereign immunity.

Accordingly, this Court lacks subject matter jurisdiction over plaintiff's motion. The motion must be denied, and this action dismissed.5

---

5     Petix's Rule 41(g) motion appears to seek only equitable relief in the form of the return of the subject cryptocurrency. However, to the extent that the Court liberally interprets Petix's pleading to include an unstated claim for monetary damages under the Federal Torts Claims Act ("FTCA"), that claim, too, is barred. An action pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*, is not viable in the instant case. Petix fails to show that he filed an administrative claim and subsequently exhausted the administrative claims process. As exhaustion of administrative remedies is a prerequisite to obtaining jurisdiction over the United States in such an action, the Court would remain without jurisdiction to hear any tort claim against the United States based upon the facts alleged in the complaint. *See, e.g. McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). But even assuming that Petix had properly met the administrative exhaustion requirements, any FTCA claims would be further barred by sovereign immunity. *Adeleke*, 355 F.3d at 153-54.

d.  PETIX FAILS TO MEET ALL THREE PRONGS FOR RULE 41(G) RELIEF

Should the Court reach the merits of the Rule 41(g) Motion, the government submits that Petix cannot demonstrate that he is entitled to relief under Rule 41(g). Therefore, the Court must deny this Rule 41(g) motion, or alternatively dismiss this action under Rule 12(b)(6), for failure to state a claim on which relief can be granted.

To prevail under Rule 41(g), Petix must demonstrate the following: (1) that Petix is entitled to lawful possession of the subject cryptocurrency, (2) that the subject cryptocurrency is not contraband, and (3) that the seizure was illegal or that the government's need for the property has ended.  *See United States v. Provenzi*, 2023 U.S. Dist. LEXIS 226059 at *4 (W.D.N.Y. December 19, 2023).

A Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction.  *See De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006); *see also Awan v. United States,* 2014 WL 1343129 (E.D.N.Y. March 31, 2014).

i.  **To meet the <u>first prong</u>, there must be a showing that Petix is entitled to lawful possession of the subject cryptocurrency. Petix has not made that showing.**

The object of Rule 41(g)'s lawful possession requirement is "rooted in the objective … to return … property to its owner."  *Provenzi,* 2023 U.S. Dist. LEXIS 226059 at *5. When

20

Petix voluntarily transferred the subject cryptocurrency to the undercover agent, as part of an illegal transaction, Petix no longer had a right or entitlement to lawful possession of the subject cryptocurrency. *See Acheampong v. United States*, 2000 WL 1261908, *5 (S.D.N.Y. 2000) (sting money, like bribe money, belongs to the government, which is entitled to keep it without having to institute formal forfeiture proceedings); *United States v. Kim*, 738 F. Supp. 1002, 1004-05 (E.D. Va. 1990).

Petix is also barred, under the common law unclean hands doctrine, from Rule 41(g) relief for subject cryptocurrency that was involved in the illegal transaction. *See Acheampong,* 2000 U.S. Dist. LEXIS 12775 at *14, quoting *United States v. Farrell*, 606 F.2d 1341,1350 (D.C. Dist. Ct. App. 1979) ("It is contrary to public policy to permit the courts to be used by the defendant to obtain the property he voluntarily surrendered as part of his attempt to violate the law"); *Farrell*, 606 F.2d at 1348-50 (holding the government was entitled to retain drug money defendant paid to undercover officer because "courts will not aid those whose cause of action is based upon an illegal act"); *see also  Henderson v. United States*, 575 U.S. 622, 625 at fn. 1 (2015), citing *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933) "(equitable relief when … an individual's misconduct has 'immediate and necessary relation to the equity he seeks . . . the doctrine might apply for example, if a felon requests the return of transfer of property used in furtherance of his offense"); *Mantilla v. United States*, 302 F.3d 182, 187 (3d Cir. 2002) (holding the common law doctrine barred recovery of property that was the subject of an illegal contract by one who is *in pari delicto*); *Santana-Lim v. United States,* 2011 WL 121802, *3-5 (S.D. Tex. Jan. 12, 2011) (applying *Mantilla* and *Farrell*); *United States v. Parlavecchio*, 192 F.Supp. 2d 349 (M.D. Pa. 2002) (denying motion for the return of property

even though the property was not forfeited because defendant did not have clean hands and therefore was not entitled to equitable remedy).

Where Petix is not entitled to lawful ownership of the subject cryptocurrency, Petix has not met the first prong for Rule 41(g) relief.

ii.    **To meet the <u>second prong</u>, there must be a showing that the subject cryptocurrency is not contraband.  Petix has also not made that showing.**

Petix was convicted in the related criminal case, in part, for the illegal transfer of the subject cryptocurrency to an undercover agent.

Although the subject cryptocurrency is not inherently illegal, it falls into the category of derivative contraband when it was used unlawfully by Petix, as part of his unlicensed and illegal money transmitting business, leading to his underlying criminal conviction. *See Farrell*, 606 F.2d at 1344 ("Derivative contraband are articles which are not inherently illegal but are used in an unlawful manner"); *see also Azzara v. United States*, 2020 U.S. Dist. LEXIS 26104 at *11 (S.D.N.Y. February 13, 2020) ("A convicted defendant cannot succeed in a 41(g) motion where the items he seeks are either 'contraband *per se*' or 'derivative contraband'"); *see also United States v. Lukkes,* 2022 U.S. Dist. LEXIS 80893 (D.S.D. 2022); *United States v. Howard,* 2019 WL 4673195 (D. Neb. 2019); *United States v. Carn,* 2017 WL 8288088 (D. Nev. 2017); *Awan,* 2014 WL 1343129 at *8, 9.

Therefore, Petix has not met the second prong for Rule 41(g) relief.

iii.    **To meet the <u>third prong</u>, there must be a showing that the government unlawfully seized the subject cryptocurrency.  Petix has also not made that showing.**

Petix voluntarily transferred the subject cryptocurrency to the undercover agent as part of a criminal investigation –the government never seized the subject cryptocurrency; therefore, Petix cannot meet the third prong required for Rule 41(g) relief.

An argument that the government unlawfully retained the subject cryptocurrency following transfer is also misplaced.  The government does not have to initiate forfeiture proceedings to retain the subject cryptocurrency involved in an illegal transaction that led to Petix's conviction. *See Acheampong,* 2000 WL 1261908 at *5 (sting money, like bribe money, belongs to the government, which is entitled to keep it without having to institute formal forfeiture proceedings); *Kardoh v. United States,* 572 F.3d 697, 701 (9th Cir. 2009) (holding the government is not required to forfeit money voluntarily paid to undercover agent in a sting case; if the payer seeks the return of the money, the court should treat it as a civil action to which the government may respond by showing that the payment was part of an illegal contract which the court may not enforce; no criminal conviction required); *Mantilla v. United States*, 302 F.3d 182, 187 (3d Cir. 2002) (holding the government does not have to initiate forfeiture proceedings to retain sting money that is voluntarily turned over to undercover agents); *United States v. Kim*, 738 F. Supp. 1002, 1004-05 (E.D. Va. 1990).

Therefore, where Petix cannot show that the subject cryptocurrency was unlawfully seized, Petix has not met his burden to establish the third prong for Rule 41(g) relief.

Where the three prongs cannot be found in favor of Petix, the government submits that Petix cannot demonstrate that he is entitled to relief under Rule 41(g). Therefore, the Court must deny this Rule 41(g) motion.

## V. <u>CONCLUSION</u>

Based upon the foregoing, the Rule 41(g) motion should be denied. Additionally, this action should also be dismissed under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

DATED: June 26, 2025.

Respectfully submitted,

MICHAEL DIGIACOMO
United States Attorney

BY:     s/MELANIE J. BAILEY
Assistant United States Attorney

s/JONATHAN W. FERRIS
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

RICHARD V. PETIX,

                Plaintiff,

       v.                                       25-CV-6205-MAV

UNITED STATES OF AMERICA,

                Defendant.

---

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2025, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant in this case:

    Richard V. Petix
    73 Virginia Manor Road
    Rochester, New York 14606

And, I hereby certify that I have also mailed the foregoing, along with copies of unpublished cases cited in the government's filing, via certified mail through the United States Postal Service, to the following individual:

    Richard V. Petix
    73 Virginia Manor Road
    Rochester, New York 14606

    s/MEGAN LIGHTHOUSE
    United States Attorney's Office
    100 State Street
    Rochester, New York 14614