UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW YORK

RICHARD V. PETIX,

    Plaintiff/Movant,

    v.

THE UNITED STATES OF AMERICA,

    Defendant.



25-CV-6205-MAV

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR RETURN OF PROPERTY AND IN OPPOSITION TO GOVERNMENT'S CROSS-MOTION TO DISMISS**

1

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**

**ARGUMENT**

I. PLAINTIFF'S MOTION IS TIMELY AS IT WAS FILED WITHIN THE SIX-YEAR STATUTE OF LIMITATIONS > A. The Cause of Action Accrued on April 29, 2019, Upon Entry of the Amended Final Order of Forfeiture. > B. In the Alternative, the Statute of Limitations Must Be Equitably Tolled Due to Government Misconduct and Fraudulent Concealment.

II. THE COURT POSSESSES SUBJECT MATTER JURISDICTION BECAUSE SOVEREIGN IMMUNITY IS NOT A BAR TO THIS ACTION > A. The *Adeleke* Doctrine Is Inapplicable Where Government Agents Unilaterally Dissipate or Convert Property. > B. An Evidentiary Hearing Is Mandated to Resolve the Factual Dispute Over the Bitcoin's Disposition.

III. PLAINTIFF IS ENTITLED TO RELIEF ON THE MERITS > A. The Government Is Judicially Estopped From Asserting Contradictory Positions. > B. The Government's "Derivative Contraband" and "Unclean Hands" Defenses Fail.

**CONCLUSION**

**EXHIBIT E**

Email Correspondence Between Richard Petix and Counsel

**TABLE OF AUTHORITIES**

**Federal Cases**

Adeleke v. United States, 355 F.3d 144 (2d Cir. 2004)

Alli-Balogun v. United States, 281 F.3d 362 (2d Cir. 2002)

Asinor v. District of Columbia, F.4th ----, 2024 WL 3733171 (D.C. Cir. Aug. 9, 2024)

Bertin v. United States, 478 F.3d 489 (2d Cir. 2007)

Brewster v. Beck, 859 F.3d 1194 (9th Cir. 2017)

Farrell v. United States, 606 F.2d 1341 (D.C. Cir. 1979)

Keystone Driller Co. v. General Excavator Co., 290 U.S. 240 (1933)

Mcintosh v. United States, 601 U.S. 330 (2024)

New Hampshire v. Maine, 532 U.S. 742 (2001)

Ramsden v. United States, 2 F.3d 322 (9th Cir. 1993)

Soviero v. United States, 967 F.2d 791 (2d Cir. 1992)

United States v. Albinson, 356 F.3d 278 (3d Cir. 2004)

United States v. Daccarett, 6 F.3d 37 (2d Cir. 1993)

United States v. Ganias, 755 F.3d 125 (2d Cir. 2014)

United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993)

United States v. Premises Known as 25 Coligni Ave., 120 F.R.D. 465 (S.D.N.Y. 1988)

United States v. Velastegui, 199 F.3d 590 (2d Cir. 1999)

**Federal Statutes and Rules**

**28 U.S.C. § 2401(a)**

**Fed. R. Crim. P. 32.2**

**Fed. R. Crim. P. 41(g)**

**Constitutional Provisions**

**U.S. Const. amend. IV**

**U.S. Const. amend. V**

**PRELIMINARY STATEMENT**

The Government's cross-motion to dismiss is a transparent attempt to evade accountability for its unlawful retention of Plaintiff Richard Petix's property. The Government's entire case rests on a series of flawed legal arguments and a single, unsubstantiated factual claim regarding the disposition of the 37 Bitcoin (BTC) at issue. The Government asks this Court to ignore the documented history of this case: a history where the Government explicitly excluded the 37 BTC from forfeiture, failed to secure the monetary judgment it did seek due to its own procedural errors, and now, years later, reverses its position to argue the property is non-returnable contraband.

This reply will demonstrate that Plaintiff's motion is timely, that the Government's sovereign immunity defense is inapplicable, and that its arguments on the merits are barred by its own prior inconsistent positions. The Government's motion to dismiss hinges on a critical factual dispute—what happened to the 37 BTC—that it cannot prove and that this Court is statutorily mandated to resolve through an evidentiary hearing. For these reasons, the Government's cross-motion must be denied in its entirety, and this Court should order an evidentiary hearing to compel the Government to finally account for its actions.

**ARGUMENT**

**I. PLAINTIFF'S MOTION IS TIMELY AS IT WAS FILED WITHIN THE SIX-YEAR STATUTE OF LIMITATIONS**

The Government's primary argument, that this action is time-barred, is predicated on a miscalculation of the accrual date for the statute of limitations. The six-year statute of limitations under 28 U.S.C. § 2401(a) did not begin to run at the time of sentencing in 2017, but rather on April 29, 2019, when the final legal status of the forfeiture was resolved and Plaintiff's cause of action became ripe. Alternatively, should the Court find the accrual date ambiguous, the doctrine of equitable tolling must apply due to the Government's fraudulent concealment of the property's disposition.

**A. The Cause of Action Accrued on April 29, 2019, Upon Entry of the Amended Final Order of Forfeiture.**

A cause of action accrues when a plaintiff has a "complete and present right to sue". The Government incorrectly argues this right arose at sentencing on November 1, 2017. This ignores the fact that the lawfulness of the Government's retention of any funds was the very subject of a successful appeal initiated by Plaintiff. Plaintiff could not have brought a motion for unlawful retention of property while the legality of the underlying forfeiture order was still being actively litigated.

The "criminal proceedings" regarding the property did not conclude until the appellate process was complete and the District Court entered a final, amended judgment reflecting the appellate ruling. The definitive event rendering the Government's retention unlawful was the Second Circuit's decision on April 16, 2019, which vacated the monetary forfeiture portion of the

5

judgment. This mandate was executed by the District Court through an amended Judgment on April 22, 2019, and, most critically, an

**Amended Final Order of Forfeiture on April 29, 2019.**

This date, April 29, 2019, is the first moment Plaintiff could state with legal certainty that no valid forfeiture order for any monetary amount existed, and thus the Government's continued retention of his property was without legal basis. His cause of action accrued on this date. Plaintiff's motion, filed in April 2025, is therefore well within the six-year limitations period and is timely. The Government's reliance on *Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007), is misplaced, as that case did not involve a successful appeal that fundamentally altered the judgment and thereby postponed the finality of the criminal proceeding as it related to the property.

**B. In the Alternative, the Statute of Limitations Must Be Equitably Tolled Due to Government Misconduct and Fraudulent Concealment.**

Even if the Court were to accept the Government's flawed 2017 accrual date, equitable tolling is warranted. A plaintiff is entitled to this rare remedy if he can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way". Plaintiff meets both prongs.

First, Plaintiff has been exceptionally diligent. The record includes email correspondence with his appellate counsel beginning on July 23, 2019—almost immediately after the Government's window to appeal the Second Circuit's decision expired—in which he persistently inquires about recovering the 37 BTC. This correspondence demonstrates his proactive and continuous efforts to reclaim his property.

Second, an "extraordinary circumstance" stood in his way: the Government's active and fraudulent concealment of the property's disposition. This is not a "garden variety claim of excusable neglect". The Government's misconduct created an information asymmetry that made it impossible for Plaintiff to know the full basis of his claim. This concealment is evidenced by:

1. **No Receipt:** Government agents provided a receipt for all seized property *except* the 37 BTC, a deviation from standard procedure suggesting an intent to keep the asset "off the books".
2. **Evidence of Conversion:** Plaintiff's preliminary blockchain analysis (Exhibit A) shows the 37 BTC were moved to a commercial Coinbase wallet and broken into smaller increments on December 7, 2015, actions consistent with conversion or theft, not lawful evidence handling.
3. **Coercive Conduct:** Plaintiff's sworn affidavit (Exhibit D) details coercive actions by HSI agents during his arrest, lending credence to the possibility of broader agent misconduct.

The doctrine of fraudulent concealment tolls the statute of limitations until the plaintiff discovers or should have discovered the facts underlying the claim. Plaintiff could not have known about

the potential theft of his Bitcoin until he was able to commission the blockchain analysis. The Government cannot benefit from a statute of limitations defense that is predicated on its own secret, wrongful acts.

## II. THE COURT POSSESSES SUBJECT MATTER JURISDICTION BECAUSE SOVEREIGN IMMUNITY IS NOT A BAR TO THIS ACTION

The Government's sovereign immunity defense is its most audacious, relying on a misapplication of precedent and a self-serving, unproven factual claim. The Government argues that because it allegedly "liquidated" the 37 BTC, it no longer possesses the property, and therefore the Court lacks jurisdiction to order monetary relief under *Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004). This argument fails both legally and factually.

### A. The *Adeleke* Doctrine Is Inapplicable Where Government Agents Unilaterally Dissipate or Convert Property.

The Government's reliance on *Adeleke* is misplaced. In *Adeleke*, the property was destroyed through no fault of the Government in the 9/11 terrorist attacks. The Second Circuit correctly held that Rule 41(g) does not waive sovereign immunity to order money damages when property is destroyed by the unforeseen act of a third party.

This case is fundamentally different. Here, the property was not destroyed by an act of God. The Government's own brief claims, without proof, that the property was "liquidated... per internal agency policy". Plaintiff's evidence suggests it may have been unlawfully converted by Government agents. In either scenario, the property's unavailability is the direct result of the Government's own intentional conduct.

To extend *Adeleke* to these facts would create a perverse incentive for government misconduct, allowing agencies to immunize themselves from Rule 41(g) motions by simply destroying or selling seized property. This would render Rule 41(g) meaningless and violate the Fifth Amendment's Due Process and Takings Clauses. Plaintiff's claim is not for "damages" in the tort sense, but for equitable restitution to remedy a constitutional wrong. Sovereign immunity was never intended to be a license for the Government to unconstitutionally deprive citizens of their property and then claim it has no obligation to make them whole.

### B. An Evidentiary Hearing Is Mandated to Resolve the Factual Dispute Over the Bitcoin's Disposition.

The Government's entire jurisdictional argument rests on a single, unsubstantiated sentence: "Upon information and belief, on or about December 7, 2015, HSI liquidated the subject cryptocurrency from the undercover wallet, per internal agency policy". This claim is offered without a shred of evidence—no agent declaration, no chain-of-custody log, no accounting records, and no copy of the alleged "internal agency policy."

This Court cannot accept such a self-serving statement as fact, especially when Plaintiff has presented credible, contrary evidence via blockchain analysis suggesting conversion. This creates

7

a quintessential dispute of material fact. Federal Rule of Criminal Procedure 41(g) is unequivocal:

**"The court must receive evidence on any factual issue necessary to decide the motion"**. The disposition of the 37 BTC is the central factual issue. Therefore, this Court is statutorily obligated to hold an evidentiary hearing to resolve this dispute. Dismissing the case based on the Government's unproven assertion would be a clear error of law.

### III. PLAINTIFF IS ENTITLED TO RELIEF ON THE MERITS

Should the Court reach the merits, the Government's defenses fail as a matter of law and equity. The Government's arguments that the 37 BTC are "derivative contraband" and that Plaintiff is barred by the "unclean hands" doctrine are foreclosed by its own prior, inconsistent litigation positions.

**A. The Government Is Judicially Estopped From Asserting Contradictory Positions.**

The doctrine of judicial estoppel protects the integrity of the courts by "prohibiting parties from deliberately changing positions according to the exigencies of the moment". The Government's conduct is a textbook example.

- **In the 2017 Criminal Proceeding:** The Government's position was that the 37 BTC were **not** part of the property to be forfeited. Its own agent affidavit explicitly excluded the transaction, stating it was "...because HSI received that transfer". The Government successfully persuaded the court to issue a forfeiture order based on that specific exclusion.
- **In the 2025 Rule 41(g) Proceeding:** The Government now completely reverses its stance, arguing the 37 BTC are non-returnable "derivative contraband" and that Plaintiff has "unclean hands" *precisely because* of their connection to the criminal offense.

The Government cannot have it both ways. It cannot strategically exclude property from forfeiture to secure a judgment, and then, after that judgment is vacated, argue the property is inextricably linked to the crime to prevent its return. This blatant inconsistency warrants the application of judicial estoppel.

**B. The Government's "Derivative Contraband" and "Unclean Hands" Defenses Fail.**

Even without estoppel, these defenses are substantively flawed.

- **Derivative Contraband:** Property's status as contraband must be established through a formal legal process, like forfeiture. The Government had its chance to declare the 37 BTC forfeited and explicitly declined to do so. The only forfeiture judgment it obtained was vacated. The Government cannot now use a Rule 41(g) proceeding as an end-run around the strict requirements of forfeiture by simply labeling the property "contraband".

8

- **Unclean Hands:** This equitable defense is only available to a party that has acted equitably itself. The Government's hands are far from clean. Its own procedural error led to the vacatur of the forfeiture judgment. Its agents failed to provide a receipt for the property and may have unlawfully converted it. The Government cannot cause the legal justification for its retention of property to be voided through its own errors and potential misconduct, and then seek refuge in an equitable defense.

## CONCLUSION

The Government's motion to dismiss is an attempt to use procedural defenses to shield itself from substantive accountability. Plaintiff's motion is timely. Sovereign immunity does not apply where the Government's own actions—and potential misconduct—are the reason the property is unavailable. The Government's arguments on the merits are barred by its own prior inconsistent statements. At the heart of this matter is a dispositive factual question: what did the Government do with the 37 BTC? The Government's only answer is an unsworn, unsupported assertion in a legal brief. That is not enough.

For the foregoing reasons, Plaintiff Richard Petix respectfully requests that this Court DENY the Government's Cross-Motion to Dismiss and GRANT an evidentiary hearing to resolve the factual disputes regarding the disposition of the 37 BTC.

Dated: July 8, 2025

Respectfully submitted,

/s/ Richard Petix Richard Petix, Pro Se 73 Virginia Manor Rd. Rochester, NY 14606

9

## **EXHIBIT E**

Email Correspondence Between Richard Petix and Counsel

From: Richard Petix

Date: April 3, 2020, 11:03 PM

To: Brendan White

Hey Mr White!

I hope you are staying healthy and safe with all that has been going on in the world.

I bet your still a very busy man even with the economic shutdown, but I was wondering if you were still up to file the motion to restore property in federal court? If you think there are to many variables in my offer to pay on a contingency basis I would be more than happy to pay for your service. If you had any other arrangement in mind pertaining to retaining you as my attorney in this matter please don't hesitate to let me know.

Feel free to contact me through this email address, or by phone at 585-435-5764.

As always thank you for your time.

Best regards,

Rick

On Mon, Feb 10, 2020 at 5:16 PM, Brendan White wrote:

Hi Richard,

10

I did try to contact the US Attorney's Office a few times several months ago when we first discussed the possibility. Unsurprisingly, I did not hear back, since it is very unlikely that they would do it willingly. I can give another try and see if I can convince them. Otherwise, we could try to file a motion in the district court. Let me know what makes sense.

Sorry it's been taking long.

Brendan White

On Mon, Feb 10, 2020 at 7:57 AM Richard Petix wrote:

Hey Mr.White,

I can see that you are not interested in helping me restore the property the government confiscated from me on the night of my arrest. I know you are a busy man, and I definitely understand. I was wondering if you could tell me what I would have to file in order to restore the 37 bitcoin. I would like to pursue this injustice, and if you could offer me any insight it would be greatly appreciated.

I hope all is well on your end, and thank you for everything you have done for me.

Sincerely,

Richard Petix

On Tue, Jul 23, 2019 at 11:48 AM, Brendan White wrote:

Hi, the government did not appeal. I will see what can be done about your property.

11

Brendan White

On Tue, Jul 23, 2019 at 5:15 AM Richard Petix wrote:

Hey Mr. White,

I hope all is going well on your end. Last time we spoke you gave me the good news of the circuit court overturning the district courts opinion in my favor. You also informed me that you believed the government had 90 days to appeal the decision. Did the government appeal the decision? If not where do we stand in regards to restoring the bitcoin the government confiscated on the night of my arrest? As I stated before, my offer still stands on a 50/50 split.

*R. Petix* (signature)

12

**Certificate Of Service**

I hereby certify that on this 8th day of July, 2025, a true and correct copy of the foregoing Motion for Return of Property Pursuant to Fed. R. Crim. P. 41(g) was served upon the United States Attorney's Office for the Western District of New York via First Class Mail, postage prepaid, addressed to:

**United States Attorney's Office**

**Western District of New York**

**138 Delaware Avenue**

**Buffalo, New York 14202**

/s/ Richard Petix

73 Virginia Manor Rd.

Rochester, New York 14606



25cv6205

FROM:
Richard Petix
73 Virginia Manor Rd
Rochester, NY 14606

TO:
Clerk of Courts
United States District court
2 Niagra Square
Buffalo, NY
14202-3498